UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY BLAIR #205423,                                    No. 08-11626

        Plaintiff,                              District Judge Bernard A. Friedman

v.                                                      Magistrate Judge R. Steven Whalen

PATRICIA BARNHART, *et al.*,

        Defendants.

                                 /

## REPORT AND RECOMMENDATION

Before this Court is Defendants Ora Carter and Laquita Featherstone's Motion for Summary Judgment [Docket #34], filed August 16, 2010 which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be GRANTED, dismissing all claims against these Defendants WITH PREJUDICE.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, a state prisoner currently housed at the Newberry Correctional Facility, filed suit on April 16, 2008 pursuant to 42 U.S.C. §1983, alleging First, Eighth, and Fourteenth Amendment violations as well as a state law claim of intentional infliction of emotional distress ("IIED") stemming from events surrounding his June 25, 2007 transfer from the Thumb Correctional Facility ("TCF") to the Bellamy Creek Correctional Facility ("IBC").

Plaintiff alleges that while performing his duties as a chaplain's clerk on May 24, 2007, his supervisor Chaplain Nuckles ("Defendant Nuckles") criticized him for dropping a box of paper, stating "'[t]hey use[d] to teach monkeys how to do these things, why didn't you grasp it?'" *Complaint* at ¶14. Plaintiff, offended by the perceived racist overtones of the remark, responded that he was not a monkey. *Id.* Defendant Nuckles continued, allegedly stating "'well, they also taught the chimpanzees too.'" *Id.* Plaintiff acknowledges that Defendant Nuckles was making an attempt at humor, noting that two hours later, the chaplain apologized for the remarks. *Id.* at ¶15, *See also Docket #1* pg. 7 of 17.

Plaintiff alleges that he then reported the incident to a staff member who in turn reported the incident to Defendant Featherstone, the school principal of the facility. *Id.* at ¶16. Defendant Featherstone repeated the account to Defendant Carter, an inspector, who then informed Defendant Barnhart, TCF's deputy warden. *Id.* Plaintiff alleges that on May 29, 2007, he was told by Defendant Barnhart that he was being "layed-in" with pay, pending an investigation. *Id.* Plaintiff alleges that he spoke directly to Defendants Featherstone, Carter, and Barnhart about his problems with Defendant Nuckles. *Id.* Plaintiff, transferred to IBC on June 25, 2007, thereafter filed grievances regarding Knuckes' comments, asserting further that he was transferred in retaliation for making verbal complaints. *Docket #1* at pgs. 7, 13, of 17. He seeks both monetary and injunctive relief.

The case was dismissed pursuant to 28 U.S.C. 1915(e)(2) on April 24, 2008. *Docket #5.* On September 3, 2009, the Sixth Circuit upheld the dismissal of the Eight and Fourteenth Amendment claims, but reversed the dismissal of the First Amendment retaliatory transfer claim. *Docket #15* at 4.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct.

2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff."  *Anderson*, 477 U.S. at 252 (emphasis added).  If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper.  *Celotex Corp.*, 477 U.S. at 322-23.

### III.  ANALYSIS

**Plaintiff's Failure to Show Personal Involvement Mandates the Dismissal of All Claims Against Carter and Featherstone**

Defendants Carter and Featherstone make multiple arguments in favor of dismissal.  First, both contend that they had no personal involvement in either Nuckles' allegedly racist remarks or the decision to transfer Plaintiff.  *Defendants' Brief* at 3.  Second, they argue that Plaintiff cannot establish two of the three elements of a First Amendment retaliation claim, to wit, Plaintiff's pre-transfer verbal complaints do not amount to protected conduct and the transfer to another level 2 security facility was not an "adverse action."*Id.* at 4-5 (*citing Vereecke v. Huron Valley Sch. Dist.,* 609 F.3d 392, 399 (6th Cir. 2010); *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999)).

Present Defendants lack of personal involvement in either the Nuckles  incident or the transfer decision defeats Plaintiff's claims against these individuals.  Defendant Featherstone, the facility's principal at the time of incident, states that she had no supervision over Plaintiff, who was then working for Nuckles in another department.  *Defendants' Brief,* Exhibit 1 at ¶3.  Contrary to Plaintiff's account, she states that Plaintiff, apparently shaken by Nuckles' comments, requested her

help in obtaining a transfer and that she simply delivered his request for a transfer to a more experienced staff member. *Id.* at ¶¶4-6. She reiterates that Plaintiff requested a transfer after the Nuckle's incident but "later had a change of heart." *Id.* at ¶7. Beyond relaying Plaintiff's request for a transfer to another staff member, she states that she "had no further involvement in the transfer process." *Id.* at ¶6.

Defendant Carter, an inspector at the time of incident, denies any firsthand knowledge of Nuckles' comments, stating that she met with Plaintiff and Defendant Featherstone on May 29, 2007 at Defendant Featherstone's request. *Defendants' Brief,* Exhibit 2 at ¶3. According to her account, she and Featherstone agreed that Defendant Barnhart, the facility's deputy warden, should be informed of the Nuckles' incident. *Id.* at ¶5. A meeting with Plaintiff, Featherstone, Carter, and Barnhart was arranged. *Id.* Carter states that "[a]t no time was I enlisted by anyone to facilitate the transfer of prisoner Blair." *Id.* at ¶6.

Plaintiff does not specifically deny that he originally asked for Featherstone and Carter's help in getting transferred, but points out that if he had really wanted to be transferred, he knew enough about the procedure to have taken his request directly to the "transfer/grievance coordinator" rather than Featherstone or Carter. *Response, Docket #38* at pg. 20 of 29, ¶18. Construed in the most favorable light, Plaintiff contends that Featherstone and Carter worked in concert with other prison officials in facilitating the retaliatory transfer.

Setting aside the issue of whether Plaintiff originally requested the transfer, he cannot show personal involvement by either Featherstone or Carter in the transfer decision. First, Plaintiff's statement that he would have taken a transfer request to the "transfer coordinator/grievance coordinator" rather than to Featherstone or Carter cuts both ways. In effect, he acknowledges that Defendants (a school principal and an inspector) were unable to approve or facilitate transfers. Next, Defendants have submitted Plaintiff's June, 2007 transfer order, signed only by Assistant Deputy Warden K. Corrigan, consistent with their position that they had no control over the transfer decision. Finally, Plaintiff offers no support for his theory that present Defendants acted with retaliatory animus in bringing his concerns about Nuckles to higher ranking officers. To the

contrary, a reading of both accounts suggests that both Featherstone and Carter showed genuine concern for Plaintiff's feelings following his unpleasant workplace experience by relaying his views to higher ranking officers.

Because Plaintiff cannot show that either of these Defendants had personal involvement in the transfer decision, the Court need not consider whether Plaintiff has met the elements First Amendment retaliation claim. Likewise, his failure to show a constitutional violation also entitles these Defendants to qualified immunity. *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)(*citing Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

Finally, Defendants' lack of involvement in the transfer, by itself, defeats Plaintiff's state claim of intentional infliction of emotional distress.[1] Consistent with the above findings, Plaintiff cannot meet the element of causation. Further, under these facts, by no stretch of the imagination could a reasonable jury find that Defendants' actions were "outrageous."

## IV. CONCLUSION

For these reasons, I recommend that Defendants' Motion for Summary Judgment [Docket #34] be GRANTED, dismissing all claims against these Defendants WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which

---

[1]To establish a claim of intentional infliction of emotional distress ("IIED"), a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford*, 237 Mich.App. 670, 674, 604 N.W.2d 713 (1999). *See also Roberts v. Auto-Owners Insurance Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985). Liability under this theory requires that the conduct complained of "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham*, 237 Mich.App. at 674. The test has been described as whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts*, 422 Mich. at 603.

raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: December 20, 2010

_____

## CERTIFICATE OF SERVICE

I hereby certify on December 20, 2010 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on December 20, 2010: **Danny Blair.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge R. Steven Whalen
(313) 234-5217